UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BASHAN STANTON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  09-6434** |
| **N. BURL CAIN, WARDEN OF LSP** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

## I.      Factual Background

The petitioner, Bashan Stanton ("Stanton"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On March 6, 2003, Stanton and two co-defendants, Damien A. Roberts and Dwayne Hines, were charged by bill of information in Orleans Parish with the armed

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

robbery and the attempted second degree murder of Lee Lewis.[3]  After the Trial Court denied the

defendants' motions to suppress, the State entered a *nolle prosequi* as to Roberts and Hines on August

14, 2003.[4]

The record reflects that Lee owned the One Stop Tire Shop located at 7532 Chef Menteur

Highway in New Orleans, Louisiana.[5]  He and one of his employees, Harry Hillard, were working in

the parking lot in front of the store when a bluish green Dodge Stratus automobile backed into the lot.

The two passengers in the car, Roberts and Hines, exited the vehicle and walked across the street.  The

driver of the car, who was later identified as Stanton, got out of the car and approached Lee.  Stanton

told Lee that his "old lady" had driven over a curb and caused a tire to go flat and he needed the tire

repaired.  Stanton, who wore a pair of gloves when he exited the car, agreed to purchase a tire

recommended by Lee, which had a purchase price of $25.00.  One of Lee's employees replaced the

damaged tire while Lee chatted with Stanton.  After the tire was replaced, Stanton paid Lee and

returned to his car.

Afterwards, Stanton left the car again and approached Lee while holding a small pistol that Lee

thought to be a "small six shot pistol."[6]  Stanton pointed the gun at Lee and demanded that Lee give

him the money Lee had in his pocket.  Lee initially told Stanton to "put that thing down."[7]  At that

---

[3]St. Rec. Vol. 2 of 5, Bill of Information, 3/6/03 (as amended 8/14/03).  Mr. Lee's first name is spelled both "Lewis" and "Louis" in various state court pleadings and court opinions.  To be consistent, the Court will use the spelling appearing in the bill of information.

[4]*Id.*; St. Rec. Vol. 1 of 5, Minute Entry, 8/14/03; Minute Entry, 7/2/03; Minute Entry, 8/11/03; Minute Entry, 8/13/03.

[5]The facts of the case were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal. *State v. Stanton*, 929 So.2d 137, 138-39 (La. App. 4th Cir. 2006); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2005-KA-0812, pp. 2-4, 3/8/06.

[6]*Id.*, 929 So.2d at 138.

[7]*Id.*

point, Stanton pulled the trigger of the gun twice. Both times, the gun made a clicking sound and misfired. Lee testified at trial that "[i]f the bullets would have been any good, I wouldn't be here today."[8] Hillard testified that he heard Stanton's gun "click" twice.

After the gun misfired, Lee realized that Stanton was serious about robbing him, and Lee took the money out of his pants pocket. When Lee reached to hand the money to Stanton, he dropped it on the ground in front of Stanton. Without retrieving the money, Stanton turned and ran, leaving his car at the scene. Lee chased Stanton. While he was fleeing, Stanton fired several shots at Lee, but none hit him. Hillard heard Stanton fire shots four times. The gun that was used to fire the shots was never recovered, but the police later found at the scene the gloves that Stanton had been wearing.

Hines and Roberts gave the police Stanton's name and other information. Both Lee and Hillard independently identified Stanton in a photographic line-up, shown to them by Detective Walter Gifford, as the person who tried to rob and shoot Lee. Both men also identified Stanton and his glove in court.

Stanton was tried before a jury on August 20, 2004, and was found guilty of armed robbery and the lesser included offense of attempted manslaughter.[9] The Trial Court sentenced Stanton on December 13, 2004, to serve 45 years in prison for armed robbery, without benefit of parole, probation or suspension of sentence, and to serve 20 years for attempted manslaughter to run concurrently.[10] The Trial Court also denied Stanton's motion to reconsider the sentence.[11]

---

[8]*Id*., 929 So.2d at 139.

[9]St. Rec. Vol. 1 of 5, Trial Minutes (2 pages), 8/30/04; St. Rec. Vol. 2 of 5, Verdict of the Jury (Count 1), 8/30/04; Verict of the Jury (Count 2), 8/30/04; St. Rec. Vol. 3 of 5, Trial Transcript, 8/30/04.

[10]St. Rec. Vol. 1 of 5, Sentencing Minutes, 12/13/04; St. Rec. Vol. 3 of 4, Sentencing Transcript, 12/13/04.

[11]*Id*.; St. Rec. Vol. 2 of 4, Motion to Reconsider Sentence, 12/14/04 (order denying dated 12/13/04).

On direct appeal, Stanton's appointed counsel argued that the sentence imposed was excessive and requested that the Court conduct an errors patent review.[12]   Stanton also filed pro se a supplemental brief in which he raised three additional assignments of error:[13] (1) the Trial Court erred in using juvenile adjudications as aggravating factors during the sentencing; (2) the Trial Court erred in using aggravating factors during sentencing that were not presented to a jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000);[14] and (3) he received ineffective assistance from appellate counsel and trial counsel.  On March 8, 2006, the Louisiana Fourth Circuit affirmed the convictions and sentences finding no merit in the claims raised by counsel or in Stanton's first two pro se claims.[15]  The Court declined to review the ineffective assistance of counsel claims finding that they would be reserved for post-conviction review.

While pursuing copies of various documents from the record and from other sources,[16] Stanton also timely[17] submitted a writ application to the Louisiana Supreme Court on April 5, 2006.[18]

---

[12]St. Rec. Vol. 3 of 5, Appeal Brief, 2005-KA-0812, 6/28/05.

[13]St. Rec. Vol. 3 of 5, Pro Se Supplemental Brief, 2005-KA-0812, 1/18/06.

[14]In *Apprendi*, the Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

[15]*State v. Stanton*, 929 So.2d 137, 138-39 (La. App. 4th Cir. 2006); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2005-KA-0812, pp. 2-4, 3/8/06.

[16]While his appeal was pending, Stanton began a pursuit of documents from various state agencies.  *See e.g.*, *State ex rel. Stanton*, 31 So.3d 378 (La. 2010); *State ex rel. Stanton v. State*, 956 So.2d 600 (La. 2007); St. Rec. Vol. 4 of 5, 4th Cir. Writ Application (and exhibits), 2006-K-0924, 7/17/06; 4th Cir. Order, 2006-K-0924, 7/31/06; St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2006-KH-2111, 8/22/06.  For reasons later discussed in this opinion, these efforts to impact the limitations discussion were unsuccessful.

[17]La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment or from the denial of a timely application for rehearing.  This afforded Stanton until April 7, 2006, to file a timely writ application.  The State recognizes that the writ application was postmarked April 13, 2006, and concludes that this writ application therefore was not timely.  However, the applicable mailbox rule considers the filing date to be the date upon which the inmate presented his pleading to prison officials for mailing to the state court.  *See Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006); *accord*, *Marshall v. Cain*, 155 Fed. Appx. 769, 2005 WL 3115095 (5th Cir. Nov. 22, 2005) (mailbox rule controls under La. S. Ct. Rule X

Although this was a timely post-appeal writ application, the Court denied the application on January 25, 2007, pursuant to La. Code Crim. P. art .930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[19]

Stanton's conviction became final 90 days later, on April 27, 2007, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.    **Procedural History**

Over seven months later, on December 5, 2007, Stanton submitted to the Trial Court an application for post-conviction relief in which he raised ineffective assistance of counsel on five grounds:[20] (1) appellate counsel failed to review the record to adequately present claims on appeal; (2) trial counsel was ineffective during the July 2, 2003, hearing on the motion to suppress the identifications; (3) trial counsel failed to move for mistrial, request a jury admonition, or object to inadmissible evidence; (4) trial counsel failed to impeach the State's witness with prior inconsistent statements; and (5) counsel brought up testimony against petitioner that was not subject to cross-examination.

---

§ 5).  Stanton signed his writ application on April 5, 2006, which, without evidence to the contrary, is presumed to be the earliest date on which he could have tendered it to prison officials for mailing to the state court.  This petition therefore is considered to have been timely filed, contrary to the State's suggestion.

[18]St. Rec. Vol. 4 of 5, La. S. Ct. Writ Application, 06-KH-1381, 6/6/06 (postal metered 4/13/06, dated 4/5/06); St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2006-KH-1381, 6/6/06 (showing postal meter 4/13/06).

[19]*State ex rel. Stanton v. State*, 948 So.2d 161 (La. 2007); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2006-KH-1381, 1/26/07.  In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. Art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

[20]The record does not contain a file-stamped copy of this application.  A copy is attached to his later writ applications.  St. Rec. Vol. 5 of 5, Uniform Application for Post-Conviction Relief, dated 12/5/07.

The Trial Court denied relief on January 15, 2008, finding that Stanton failed to carry his burden of proof under La. Code Crim. P. art. 930.2, which sets the standard for post-conviction relief.[21] The Louisiana Fourth Circuit denied relief on Stanton's subsequent writ application to that Court finding no error in the Trial Court's ruling.[22]

The record indicates that on March 12, 2008, Stanton submitted a "letter" of an unknown nature to the Louisiana Supreme Court which was returned to him "unfiled."[23] He was advised by the Central Staff at the Louisiana Supreme Court that his "letter" was not in a procedurally proper form for the Court to consider and, therefore, it was not filed.[24]

Thereafter, on October 1, 2008, Stanton submitted an untimely[25] writ application to the Louisiana Supreme Court seeking review of his post-conviction claims.[26]  The Court denied the application without stated reasons on August 12, 2009.[27]

III.    **The Federal Petition**

On September 17, 2009, the clerk of this Court filed Stanton's petition for federal habeas corpus relief, in which he raised three grounds for relief:[28] (1) ineffective assistance of trial and

---

[21]St. Rec. Vol. 5 of 5, Trial Court Judgment, 1/15/08.

[22]St. Rec. Vol. 5 of 5, 4th Cir. Writ Application, 2008-K-145, 2/7/08.

[23]St. Rec. Vol. 5 of 5, La. S. Ct. Central Staff Letter, 3/27/08.

[24]*Id.*

[25]As noted above, La. S.Ct. R. X § 5(a) provides that an application seeking review of the judgment of the Court of Appeal shall be filed or postmarked within 30 days of the issuance of the judgment, as considered with the applicable mailbox rule.  As will be discussed later in this report, Stanton's application was not submitted or filed within that period.

[26]St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 08-KH-2457, 10/13/08 (postal metered 10/1/08).

[27]*State ex rel. Stanton v. State*, 17 So.3d 378 (La. 2009); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2008-KH-2457, 8/12/09.

[28]Rec. Doc. No. 1; *see also*, Rec. Doc. Nos. 6, 7.

appellate counsel where appellate counsel failed to adequately review the record to lodge an adequate

appeal; (2) denial of effective assistance of counsel at the July 2, 2003, suppression hearing; (3)

ineffective assistance of counsel where counsel failed to move for a mistrial, jury admonition, or object

to inadmissible evidence; (4) ineffective assistance of counsel where counsel failed to impeach the

State's eyewitness with prior inconsistent statements; and (5) ineffective assistance of counsel where

counsel brought up testimony against the petitioner that could not be cross-examined.

The State filed a response in opposition to Stanton's petition alleging that the petition was not

timely filed.[29]   Stanton did not file a reply to the State's limitations defense.

## IV.    Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214,[30] applies to this petition, which is deemed filed in this Court under the federal mailbox

rule on August 16, 2009.[31]   The threshold questions in habeas review under the amended statute are

whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the

merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in

---

[29]Rec. Doc. No. 6.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Stanton's petition on September 17, 2009, when he paid the filing fee.  Stanton's signature on the petition is dated August 16, 2009.  This is the earliest date on which he could have submitted the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

"procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

In this case, the State alleges that Stanton's petition is not timely filed. The Court agrees with the State's conclusion for the following reasons.

## V.    Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[32] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). As discussed above, Stanton's conviction became final on April 27, 2007, which was 90-days after the Louisiana Supreme Court denied his writ application after direct appeal.

Under the plain language of § 2244, Stanton had until Monday, April 28, 2008, to file a timely federal application for habeas corpus relief and he failed to do so. Thus, literal application of the statute would bar Stanton's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

---

[32]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2) (2006). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey v. Saffold*, 536 U.S. 122 (2002) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have

addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

Furthermore, requests for documents and transcript copies like those filed by petitioner in the state courts are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

In this case, the AEDPA's one-year filing period began to run on April 28, 2007, the day after Stanton's conviction became final. The period ran 221 days until December 5, 2007, when Stanton submitted his application for post-conviction relief to the Trial Court. The application remained pending until Monday, April 7, 2008, which was 30 days[33] after the Louisiana Fourth Circuit denied his related writ application. Stanton thereafter did not file for timely review in the Louisiana Supreme Court. The filing period therefore began to run again on April 8, 2008, and did so uninterrupted for

---

[33]The thirtieth day was Sunday April 6, 2008, so the deadline falls to the Monday under both federal and state law.

the remaining 144 days, until Tuesday, September 2, 2008,[34] when it expired.  This was almost one year before Stanton submitted his federal petition for filing in this Court.

The Court is aware that, during that period, Stanton submitted a letter of an unknown nature dated March 12, 2008, to the Louisiana Supreme Court.  The letter was returned "unfiled" to Stanton by the Court, because it was not in a procedurally proper form.  This means that the letter was not a properly filed state application for post-conviction or other collateral review.  Stanton is not entitled to tolling credit for that letter, which was neither proper nor filed by the court.[35]

Stanton also later submitted the untimely writ application to the Louisiana Supreme Court on October 1, 2008.  As noted above, pursuant to La. S.Ct. Rule X§5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment under review or from the denial of a timely filed application for rehearing.  *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009).  In the prisoner context, the Court must also consider when the pleading was submitted to prison officials for mailing.  *See*, *Causey*, 450 F.3d at 601.  In this case, Stanton's 2008 writ application was not timely submitted to the Louisiana Supreme Court by April 7, 2008, the period allowed under La. S. Ct. Rule X§5.  A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008).

---

[34]The 144th day was Saturday, August 30, 2008, and the following Monday ,September 1, 2008, was Labor Day.  The deadline falls to the next business day, Tuesday September 2, 2008, under both state and federal law.

[35]*See also*, *Bowie v. Cain*, 33 Fed. Appx. 705, 2002 WL 432675 at *2, *3 (5th Cir. Mar. 7, 2002) (Table, Text in Westlaw) (rejecting the suggestion that an action by the Louisiana Supreme Court's central staff constitutes a waiver of strict application of La. S. Ct. Rule X§5).

Stanton's 2008 Louisiana Supreme Court application did not interrupt or toll the AEDPA filing period which expired on Tuesday, September 2, 2008.  The Court also notes that pleadings filed in the state courts after the expiration of the AEDPA filing period do not provide any tolling benefit.  *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

In this case, Stanton has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.  Stanton's federal petition is deemed filed on August 16, 2009, which is almost eleven months after the AEDPA filing period expired on September 2, 2008.  Consequently, Stanton's federal petition must be dismissed as untimely filed.

## VI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Bashan Stanton's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure
to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 25th day of February, 2011.

 

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.